IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| BOARD OF TRUSTEES, SHEET METAL WORKERS' NATIONAL PENSION FUND, et al., | ) ) ) ) |
| Plaintiffs, | ) ) Civil Action No. 1:12cv1026 (CMH/JFA) |
| v. | ) ) ) |
| NORTH PARK HEATING, COMPANY, INC., | ) ) ) ) |
| Defendant. | ) ) |

## PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS

This matter is before the court on plaintiffs' motion for default judgment pursuant to Fed. R. Civ. P. 55(b)(2). (Docket no. 8). Plaintiffs are the Board of Trustees of the Sheet Metal Workers' National Pension Fund ("NPF"), the Board of Trustees of the International Training Institute for the Sheet Metal and Air Conditioning Industry ("ITI"), the Board of Trustees for the National Energy Management Institute Committee ("NEMIC"), and the Board of Trustees for the Sheet Metal Occupational Health Institute Trust Fund ("SMOHIT") and they seek a default judgment against defendant North Park Heating Company, Inc. ("North Park"). Pursuant to 28 U.S.C. § 636(b)(1)(C), the undersigned magistrate judge is filing with the court his proposed findings of fact and recommendations, a copy of which will be provided to all parties.

### Procedural Background

On September 13, 2012, the plaintiffs filed this action alleging that North Park is obligated to pay them for certain delinquent fund contributions, accrued interest, liquidated

1

damages, late fees, audit costs, attorney's fees, and costs. (Docket no. 1). A summons was issued for the complaint on September 13, 2012. (Docket no. 3). The summons and complaint were served on the registered agent for North Park on September 20, 2012. (Docket no. 4). In accordance with Fed. R. Civ. P. 12(a), a responsive pleading was due on October 11, 2012, twenty-one days after North Park was served with the summons and complaint.

North Park failed to file a responsive pleading in a timely manner and on December 13, 2012, the plaintiffs filed their request for entry of default. (Docket no. 6). The Clerk of the Court entered default against North Park pursuant to Fed. R. Civ. P. 55(a) on December 17, 2012. (Docket no. 7). On December 21, 2012, the plaintiffs filed a motion for default judgment with a supporting memorandum and declarations from Walter Shaw and Sarah Naji, and a notice of hearing for January 4, 2013 at 10:00 a.m. (Docket nos. 8-12). The motion for default judgment, supporting memorandum, declarations, and notice of hearing were served on North Park by mail on December 21, 2012. *Id.* On January 4, 2013, counsel for the plaintiffs appeared at the hearing on the motion for default judgment and no one appeared on behalf of North Park. At the undersigned's request, plaintiffs filed a supplemental memorandum in support of the motion for default judgment on January 8, 2013 addressing a statute of limitations question. (Docket no. 15).

## Factual Background

The following facts are established by the complaint (Docket no. 1), the motion for default judgment, and the memorandum and declarations filed in support of the motion for default judgment (Docket nos. 8-11).

The plaintiffs are "fiduciaries," within the meaning of 29 U.S.C. § 1002(21) and are empowered to bring this action pursuant to 29 U.S.C. §§ 1132(a)(3) and 1132(g)(2). (Compl. ¶

2

5). The NPF and ITI are jointly trusted trust funds created and maintained pursuant to 29 U.S.C. § 186(c) and are "multiemployer plans" within the meaning of 29 U.S.C. § 1002(37). *Id.* NEMIC and SMOHIT are jointly trusted trust funds created and maintained pursuant to 29 U.S.C. § 186(c). *Id.* The funds for which the plaintiffs bring this action are administered in this district from their principal place of business in Fairfax, Virginia. (Compl. ¶ 3).

North Park is a corporation organized and existing under the laws of the state of Washington with offices in Lake Forest Park, Washington. (Compl. ¶ 7). North Park is an employer in an industry affecting commerce as defined by 29 U.S.C. §§ 152(2) and 1002(5), (11), and (12). (Compl. ¶ 6). North Park employs employees represented for the purposes of collective bargaining by the Sheet Metal Workers' International Association Local Union No. 66, a labor organization representing employees in an industry affecting interstate commerce (collectively, the "Union"). (Compl. ¶ 8). North Park is a signatory to and bound by the terms and conditions of a collective bargaining agreement with the Union (the "Labor Contract"). (Compl. ¶ 9).

Under the Labor Contract, North Park is obligated to abide by the terms and conditions of the Trust Agreements establishing the funds, including any amendments thereto ("Trust Documents"), and to submit monthly reports and payments to the funds. (Compl. ¶ 10). Payments due to the funds are calculated on remittance reports required to be prepared monthly by each contributing employer. (Compl. ¶ 11). On these remittance reports, North Park is required to report the amount of contributions due to the funds on the basis of all hours worked by its covered employees. (Compl. ¶ 13). Because contributing employers themselves calculate and prepare the monthly remittance reports, the funds must rely on the honesty and accuracy of the employers in reporting hours worked and paid, and in reporting the contributions owed on

3

behalf of their employees. (Compl. ¶ 12). Without the information contained in the remittance reports, the funds cannot determine either the amount of the monthly contributions due or the employees' eligibility for benefits. (Compl. ¶ 14). The Labor Contract requires that completed remittance reports and accompanying payments are due to the funds no later than the twentieth day after the end of each month for hours worked in that month and are delinquent if received thereafter. (Compl. ¶ 15).

In accordance with the Trust Documents and the applicable Procedures for the Collection of Contributions ("Collections Policy"), the funds' auditors conducted an audit of North Park's payroll records for the period of January 2006 through December 2008. (Compl. ¶ 16). The audit was completed on July 7, 2009, and it revealed that North Park had failed to pay the required contributions for the period of January 2006 through December 2008. (Compl. ¶ 17). Based on the audit findings, North Park owes contributions in the amounts of $152.05 for the months of May 2006, June 2006, July 2006, October 2006, February 2007, and May 2007. (Compl. ¶ 18).

Based on reports submitted by North Park to the plaintiffs, North Park owes contributions in the amount of $2,012.73 for the months of August 2011, September 2011, and January 2012. (Compl. ¶ 19). Based on reports previously submitted by North Park to the plaintiffs, the plaintiffs estimate that North Park owes contributions in the amount of $11,596.53 for the months of October 2011, November 2011, December 2011, February 2012, March 2012, April 2012, May 2012, June 2012, and July 2012. (Compl. ¶ 20). For the months of May 2006, June 2006, July 2006, October 2006, February 2007, May 2007, and August 2011 through July 2012, North Park employed employees for whom monthly contributions were due but failed to make the required employer contributions, despite its obligation to do so under the Labor

4

Contract, the Trust Documents, and 29 U.S.C. § 1145. (Compl. ¶ 21). North Park also failed to make contributions to the plaintiffs in a timely manner for the months of November 2010, February 2011, May 2011, and July 2011 despite its obligation to do so under the Labor Contract, the Trust Documents, and 29 U.S.C. § 1145. (Compl. ¶ 22).

The Trust Documents require a payment of late fees for all contributions not paid when due in the amount of 10% of the delinquent contributions or $50.00. (Compl. ¶ 23). Pursuant to the Collections Policy, North Park is required to pay the costs of the audit and it has not done so. (Compl. ¶¶ 24, 25). Pursuant to 29 U.S.C. §§ 1132 and 1145, the Labor Contract, the Trust Documents, and the Collections Policy, in addition to the delinquent contributions, North Park is required to pay the plaintiffs interest on any delinquent contributions at a rate of 0.0233% per day; liquidated damages of twenty percent (20%) of the contributions not paid when due; the costs of the audit; and all attorney's fees and costs incurred by the plaintiffs as a result of North Park's failure to comply with its obligations. (Compl. ¶ 26).

In the complaint, the plaintiffs sought a judgment in the amount of $13,761.31 in unpaid contributions; interest on the delinquent contributions and contributions not paid when due at a rate of 0.0233% per day from the date due until paid or the date of the judgment in the amount of at least $797.90; liquated damages equal to 20% of the delinquent contributions in the amount of at least $2,751.73; late fees in the amount of at least $746.35; the costs of the audit in the amount of $671.64; and the attorney's fees and costs incurred in this action. (Compl. pg. 7).

In the motion for default judgment, the plaintiffs state that they are owed the amounts as detailed below. (Docket no. 8).

| Plaintiff | Contributions | Interest through 12/18/2012 | Liquidated Damages | Late Fees | Costs, Attorney's Fees and Audit Costs | Total |
|---|---|---|---|---|---|---|
| NPF | $12,420.14 | $1,020.10 | $2,483.89 | $678.53 | $2,709.64<br>$671.64 | $19,983.94 |
| ITI | $946.86 | $81.65 | $189.24 | $47.91 | $0 | $1,265.66 |
| SMOHIT | $157.70 | $13.61 | $31.38 | $7.95 | $0 | $210.64 |
| NEMIC | $236.61 | $20.40 | $47.22 | $11.96 | $0 | $316.19 |
| Total | $13,761.31 | $1,135.76 | $2,751.73 | $746.35 | $3,381.28 | **$21,776.43** |

## Proposed Findings and Recommendations

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of a default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." The court must have both subject matter and personal jurisdiction over a defaulting party before it can render a default judgment.

A defendant in default admits the factual allegations in the complaint. *See* Fed. R. Civ. P. 8(b)(6) ("An allegation - other than one relating to the amount of damages - is admitted if a responsive pleading is required and the allegation is not denied."); *see also GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim."). Rule 55(b)(2) provides that a court may conduct a hearing to determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter.

## Jurisdiction and Venue

The plaintiffs allege that this court has subject matter jurisdiction under Section 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132. (Compl. ¶ 2). ERISA Section 502 provides that U.S. district courts have jurisdiction over civil actions brought under this title. This case is properly before the court under its federal question jurisdiction pursuant to 29 U.S.C. § 1132(e) since it is brought under ERISA for an alleged failure to make contributions in accordance with a collective bargaining agreement or multi-employer plan. The plaintiffs further allege that this court has subject matter jurisdiction under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). (Compl. ¶ 1). That section provides that U.S. district courts have jurisdiction over suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce. This case is also properly before the court pursuant to 29 U.S.C. § 185(a) since it is brought under the LMRA for violation of a contract between an employer and a labor organization.

ERISA Section 502 states that an action under this title may be brought in the "district where the plan is administered" and "process may be served in any other district where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2). The plaintiffs state that they are administered in Fairfax, Virginia. (Compl. ¶ 3). On September 20, 2012, the summons and complaint were served on the registered agent of North Park. (Docket no. 4). Venue is proper in this court and this court has personal jurisdiction over the defendant since the plaintiffs are administered within the Alexandria Division of the Eastern District of Virginia. *See Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. McD Metals, Inc.*, 964 F. Supp. 1040 (E.D. Va.

1997) (personal jurisdiction in an ERISA action should be determined on the basis of the defendant's national contacts with the United States pursuant to the Due Process Clause of the Fifth Amendment and ERISA itself provides for nationwide service of process).

For these reasons, the undersigned magistrate judge recommends a finding that this court has subject matter jurisdiction over this action, that the court has personal jurisdiction over the defendant, and that venue is proper in this court.

### Grounds for Entry of Default

The complaint was served on the registered agent for North Park on September 20, 2012. (Docket no. 4). Under Fed. R. Civ. P. 12(a), a responsive pleading was due on October 11, 2012; twenty-one days after the complaint had been served on North Park. After North Park failed to file an answer or responsive pleading in a timely manner, the plaintiffs requested an entry of default on December 13, 2012. (Docket no. 6). The Clerk of the Court entered a default on December 17, 2012. (Docket no. 7).

The undersigned magistrate judge recommends a finding that North Park was served properly, that it failed to file a responsive pleading in a timely manner, and that the Clerk of the Court properly entered a default as to North Park.

### Liability and Measure of Damages

According to Rule 54(c), a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Because North Park did not file a responsive pleading and is in default, it admits the factual allegations in the complaint. *See* Fed. R. Civ. P. 8(b)(6). In addition, since North Park has failed to respond to the complaint in a timely manner, it has waived any statute of limitations defense it might have been entitled to assert in this

action. (Docket no. 15, citing *Erline Company S.A. v. Johnson*, 440 F.3d 648, 655-57 (4th Cir. 2006)).

Plaintiffs' motion for default judgment in this case involves several components as described in the motion and memorandum in support (Docket nos. 8, 9) and the declaration from Walter Shaw (Docket no. 10) ("Shaw Decl."). First, plaintiffs seek a judgment for unpaid contributions for the months of May 2006, June 2006, July 2006, October 2006, February 2007, and May 2007 in the amount of $152.05 that were discovered as a result of an audit performed in 2009. (Shaw Decl. ¶ 12). In addition to the unpaid contributions, plaintiffs seek an award for the costs of the audit in the amount of $671.64. (Shaw Decl. ¶ 21). Next, plaintiffs assert that North Park failed to make the required contributions for the months of September 2011 through December 2011 and February 2012 through July 2012 in the total amount of $13,609.26 comprising $12,309.06 owed to the NPF; $917.94 owed to the ITI; $229.38 owed to the NEMIC; and $152.88 owed to the SMOHIT.[1] (Shaw Decl. ¶ 11). The plaintiffs received no reports of hours worked by North Park covered employees for the months of October 2011 through December 2011 and February 2012 through July 2012. (Shaw Decl. ¶ 5). In order to estimate the contributions owed by North Park for the months for which remittance reports were not received, the plaintiffs used the most recent remittance report submitted by North Park – *i.e.* for October 2011 through December 2011, the September 2011 remittance report was used and for February 2012 through July 2012, the January 2012 remittance report was used. (Shaw Decl. ¶¶ 9, 10). Finally, plaintiffs claim that North Park failed to make the required

---

[1] According to the Shaw declaration, North Park has paid the contributions due for August 2011 and January 2012 but owes interest for those months. (Shaw Decl. ¶ 22).

contributions in a timely manner for the months of November 2010, February 2011, May 2011, and July 2011 and are liable for late fees to the plaintiffs as a result of the late payments. (Shaw Decl. ¶ 16).

As set forth in the complaint, 29 U.S.C. § 1132(g)(2) provides that in any action brought to enforce the payment of delinquent contributions in which a judgment in favor of the plan is awarded, the court shall award the plan:

> (A) the unpaid contributions,
>
> (B) interest on the unpaid contributions,
>
> (C) an amount equal to the greater of -
>
>> (i) interest on the unpaid contributions, or
>> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2).

In support of their claim for damages, the plaintiffs have submitted a detailed declaration from Walter Shaw. (Docket no. 10). Mr. Shaw is the Manager of Billing and Eligibility for the NPF, and is familiar with the payment histories of employers obligated to make contributions to the NPF, the ITI, the SMOHIT, and the NEMIC. (Shaw Decl. ¶ 1). The information contained in the declaration of Mr. Shaw establishes that North Park owes at least $16,602.66 to the NPF, which includes $12,420.14 in unpaid contributions ($12,309.06 for the months of September

2011 through December 2011 and February 2012 through July 2012 and $111.08 for the months of May 2006, June 2006, July 2006, October 2006, February 2007, and May 2007); interest of $1,020.10 calculated at a daily rate of 0.0233% from the date the payment was due through December 18, 2012; liquidated damages of $2,483.89 on the contributions unpaid at the commencement of litigation calculated at a rate of 20%; and $678.53 in late fees for the payments not made in a timely manner in November 2010, February 2011, May 2011, and July 2011. (Shaw Decl. ¶¶ 11-20).

North Park also owes at least $1,265.66 to the ITI, which includes $946.86 in unpaid contributions ($917.94 for the months of September 2011 through December 2011 and February 2012 through July 2012 and $28.92 for the months of May 2006, June 2006, July 2006, October 2006, February 2007, and May 2007); interest of $81.65 calculated at a daily rate of 0.0233% from the date the payment was due through December 18, 2012; liquidated damages of $189.24 on the contributions unpaid at the commencement of litigation calculated at a rate of 20%; and $47.91 in late fees for the payments not made in a timely manner in November 2010, February 2011, May 2011, and July 2011. (Shaw Decl. ¶¶ 11-20).

The Shaw declaration also establishes that North Park also owes at least $210.64 to the SMOHIT, which includes $157.70 in unpaid contributions ($152.88 for the months of September 2011 through December 2011 and February 2012 through July 2012 and $4.82 for the months of May 2006, June 2006, July 2006, October 2006, February 2007, and May 2007); interest of $13.61 calculated at a daily rate of 0.0233% from the date the payment was due through December 18, 2012; liquidated damages of $31.38 on the contributions unpaid at the commencement of litigation calculated at a rate of 20%; and $7.95 in late fees for the payments

not made in a timely manner in November 2010, February 2011, May 2011, and July 2011. (Shaw Decl. ¶¶ 11-20).

Finally, the Shaw declaration shows that North Park owes at least $316.19 to the NEMIC, which includes $236.61 in unpaid contributions ($229.38 for the months of September 2011 through December 2011 and February 2012 through July 2012 and $7.23 for the months of May 2006, June 2006, July 2006, October 2006, February 2007, and May 2007); interest of $20.40 calculated at a daily rate of 0.0233% from the date the payment was due through December 18, 2012; liquidated damages of $47.22 on the contributions unpaid at the commencement of litigation calculated at a rate of 20%; and $11.96 in late fees for the payments not made in a timely manner in November 2010, February 2011, May 2011, and July 2011. (Shaw Decl. ¶¶ 11-20).

The NPF also submitted a declaration from Sarah G. Naji detailing the attorney's fees and costs incurred in this action. (Docket no. 11) ("Naji Decl."). The total amount of the attorney's fees incurred was $2,027.50 and the total amount of costs was $682.14. (Naji Decl. ¶¶ 5, 6). The $2,027.50 in attorney's fees is comprised of 3.1 hours of attorney's time and 8.2 hours for a legal assistant. (Docket no. 11, Naji Decl. ¶ 5, Ex. 1). The amount of costs was $682.14, which is comprised of $0.45 for photocopy fees, $234.00 for service fees, $350.00 for filing fees, $97.59 for postage, delivery, and courier charges, and $0.10 for Pacer fees. (Docket no. 11, Naji Decl. ¶ 6, Ex. 1). The hourly rates charged for the attorney time ranged from $260.00 to $290.00 and the hourly rate for the legal assistant ranged from $145.00 to $150.00. (Naji Decl. ¶ 5). The undersigned magistrate judge has reviewed the declaration of Ms. Naji

and recommends a finding that the hourly rates charged and time entries for the attorneys and the legal assistant and the costs incurred by the NPF are reasonable.[2]

For these reasons, the undersigned recommends that a default judgment be entered in favor of the plaintiffs the Board of Trustees of the Sheet Metal Workers' National Pension Fund, the Board of Trustees of the International Training Institute for the Sheet Metal and Air Conditioning Industry, the Board of Trustees for the National Energy Management Institute Committee, and the Board of Trustees for the Sheet Metal Occupational Health Institute Trust Fund in the amounts shown below:

| *Plaintiff* | *Contributions* | *Interest through 12/18/2012* | *Liquidated Damages* | *Late Fees* | *Costs, Attorney's Fees and Audit Costs* | *Total* |
|---|---|---|---|---|---|---|
| NPF | $12,420.14 | $1,020.10 | $2,483.89 | $678.53 | $2,709.64 $671.64 | $19,983.94 |
| ITI | $946.86 | $81.65 | $189.24 | $47.91 | $0 | $1,265.66 |
| SMOHIT | $157.70 | $13.61 | $31.38 | $7.95 | $0 | $210.64 |
| NEMIC | $236.61 | $20.40 | $47.22 | $11.96 | $0 | $316.19 |
| Total | $13,761.31 | $1,135.76 | $2,751.73 | $746.35 | $3,381.28 | **$21,776.43** |

---

[2] The Naji declaration does not comply fully with the standards set forth in *Grissom v. The Mills Corp.*, 549 F.3d 313, 320-23 (4th Cir. 2008), *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 (4th Cir. 1978) and *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990) for establishing a reasonable hourly rate. However, since the defendant has not contested the hourly rates in this case, the court will accept the allegations set forth by the NPF concerning the reasonableness of those rates as true. The hourly rates and costs requested are consistent with the rates and costs incurred in similar cases and awarded by this court.

## Conclusion

For the reasons stated above, the undersigned recommends that a judgment be entered in favor of the plaintiffs in the total amount of $21,776.43, which includes contributions of $13,761.31, interest of $1,135.76, liquated damages of $2,751.73, late fees of $746.35, legal fees and costs of $2,709.64, and audit costs of $671.64.

## Notice

By means of the court's electronic filing system and by mailing a copy of the proposed findings of fact and recommendations to North Park Heating Company, Inc., David J. Hughes, Registered Agent, 19204 Ballinger Way, N.E., Seattle WA 98155 and James E. Dickmeyer, 121 Third Avenue, Kirkland, WA 98033, the parties are notified that objections to this proposed findings of fact and recommendations must be filed within fourteen (14) days of service of this proposed findings of fact and recommendations and a failure to file timely objections waives appellate review of the substance of the proposed findings of fact and recommendations and waives appellate review of any judgment or decision based on this proposed findings of fact and recommendations.

ENTERED this 15th day of January 2013.

/s/
John F. Anderson
United States Magistrate Judge
John F. Anderson
United States Magistrate Judge

Alexandria, Virginia